JUDGE CASTEL

'08 CIV 5674

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

RECEIVED
JUN 24 2008
U.S.D.C. S.D. N.Y.
CASHIERS

| | |
|---|---|
| NEW YORK CIVIL LIBERTIES UNION, | ) |
| Plaintiff, | ) **COMPLAINT** |
| v. | ) 08 Civ |
| UNITED STATES DEPARTMENT OF JUSTICE, | ) |
| Defendant. | ) ECF Case |

## PRELIMINARY STATEMENT

1.  This lawsuit challenges the federal government's improper invocation of national security to deny public access to information about a federal program that may have invaded the privacy rights of more than 100,000 people. In May 2007, the Federal Bureau of Investigation released a document that referred to an "Operation Darkening Clouds," which the document explained was based on the review of "over 130,000 immigration records" "[d]uring the pre-invasion of Iraq." When the plaintiff, the New York Civil Liberties Union, then filed a request under the federal Freedom of Information Act seeking documents about the operation, the FBI claimed that "[t]he existence or nonexistence of an Operation Darkening Cloud(s) is classified" and thus refused to acknowledge whether documents about the operation even existed.

2.  Having already publicly acknowledged the existence of Operation Darkening Clouds and having disclosed information about that program, the FBI is not now free to invoke national security to shield the program from public disclosure under the Freedom

of Information Act. Moreover, as evidenced by two recent congressional mandates signed into law by President Bush, public disclosure of programs like Operation Darkening Clouds does not threaten national security. The plaintiff seeks a declaration that the FBI has violated the statute, an injunction requiring the agency to comply with the statute, and an award of attorneys' fees.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over the plaintiff's claims and personal jurisdiction over the defendant agency pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1346(a)(2).

4. Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1391(e) and 1402(a)(1), as the complainant is located within the Southern District of New York.

## PARTIES

5. Plaintiff New York Civil Liberties Union ("NYCLU") is the New York State affiliate of the American Civil Liberties Union. The NYCLU is a not-for-profit corporation that defends the civil rights and civil liberties of New Yorkers. To inform the public about government conduct affecting legal rights, the NYCLU publishes newsletters, press releases, know-your-rights handbooks, and numerous other materials. NYCLU publications are available to everyone -- including tax-exempt organizations, not-for-profit groups, law students, and academics -- for no cost or for a nominal fee. The NYCLU also disseminates information through its website -- www.nyclu.org -- and through an electronic newsletter, which is received by thousands of subscribers.

6. Defendant United States Department of Justice ("DOJ") is the federal agency responsible for the legal business of the United States, including the investigation and prosecution of criminal activity within the United States. The Federal Bureau of Investigation ("FBI"), a component entity of DOJ, is responsible for investigating violations of the criminal laws of the United States. DOJ is an agency within the meaning of 5 U.S.C. § 552(f).

## STATEMENT OF FACTS

### Controversial Data Mining and Congressionally Mandated Disclosure

7. "Data mining" is computer-aided analysis of large quantities of ordinary personal data – such as phone, travel, banking, Internet, and purchase records – seeking to reveal previously unknown patterns of past activities and to predict future behavior.

8. Since September 11, 2001, the federal government has aggressively engaged in the data mining of vast quantities of information concerning individuals not suspected of any wrongdoing. In the past seven years, law enforcement and intelligence organizations have data mined a broad swath of personal information, including millions of domestic phone records and the background information of over a million domestic air travelers.

9. According to a report by the United States General Accounting Office, by May 2004 there were more than 100 planned or operational federal programs for data mining of personal information.

10. In several instances public disclosure about government data-mining programs has provoked severe backlash, and Congress has halted at least two federal data-mining programs. Media analyses have pointed out significant flaws in some data mining

programs that could result in individuals being falsely suspected of crimes or unfairly branded as security risks.

11. In response to widespread concern about government data-mining programs, the USA PATRIOT Improvement and Reauthorization Act of 2005, which President Bush signed into law in March 2006, included a provision mandating public reporting about such programs. Specifically, section 126 of the Act required the Attorney General to submit a report within one year of the law's enactment and every year thereafter concerning "any initiative of the Department of Justice that uses or is intended to develop pattern-based data-mining technology."

12. In July 2007, DOJ submitted the first required report to Congress detailing numerous data-mining programs, including six FBI programs: the System to Assess Risk (STAR) Initiative, Identity Theft Intelligence Initiative, Health Care Fraud Initiative, Internet Pharmacy Fraud Initiative, Housing Fraud Initiative, and Automobile Accident Insurance Fraud Initiative.

13. One year after requiring DOJ to report about data-mining programs, Congress passed the Federal Agency Data Mining Reporting Act of 2007, which requires all federal agencies to report periodically about their data-mining programs. President Bush signed the Act into law on August 3, 2007.

14. As evidenced by congressional enactment of the Federal Agency Data Mining Reporting Act and by section 126 of the reauthorized USA PATRIOT Act, public disclosure of the existence and nature of government data-mining programs allows for informed democratic decision-making without unnecessarily compromising agency effectiveness.

**"Operation Darkening Clouds"**

15. In October and November of 2006, the Allard K. Lowenstein International Human Rights Project – a student organization at Yale Law School dedicated to the promotion of human rights – submitted several Freedom of Information Act ("FOIA") requests concerning Operation Frontline, a targeted immigration-enforcement program that likely utilized data mining.

16. During subsequent litigation over the FOIA requests about Operation Frontline, the FBI officially released a Department of Homeland Security document entitled "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems," which described the widespread use of data mining technology by immigration enforcement officers.    The document is prominently labeled "Unclassified/LES." A copy of the document – including a cover letter signed by David Hardy, Section Chief, Records/Information Dissemination Division, Federal Bureau of Investigation – is attached to this complaint as Exhibit A.

17. "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems" includes the following statement: "During the pre-invasion of Iraq, FDNS personnel pulled together over 130,000 immigration records which were the cornerstone for Operation Darkening Clouds (FBI) . . . ." Ex. A.

**The NYCLU's FOIA Request to the Federal Bureau of Investigation**

18. In light of the FBI's specific, official disclosure of the existence of "Operation Darkening Clouds," the NYCLU submitted a FOIA request to the FBI on May 21, 2007, seeking "any record held by the Federal Bureau of Investigation mentioning or describing any action, program, operation, or activity titled 'Operation Darkening Cloud' or

'Operation Darkening Clouds.'" A copy of that request is attached to this complaint as Exhibit B.

19. On August 22, 2007, the NYCLU received a letter dated August 15, 2007 stating that the FBI "neither confirms nor denies the existence of the activity or records concerning this subject." This letter was signed by David M. Hardy, Section Chief, Record/Information Dissemination Section, Federal Bureau of Investigation, the same official who had signed the cover letter for the release of "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems." A copy of the letter is attached to this complaint as Exhibit C.

20. On September 21, 2007, the NYCLU submitted an administrative appeal to the United States Department of Justice, appealing the denial of its request. In particular, the NYCLU noted that the FBI had "publicly acknowledged the existence of and basic scope of Operation Darkening Clouds" by releasing a document that referenced the operation in response to a different FOIA request. A copy of "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems" was included with that appeal. A copy of the appeal is attached to this complaint as Exhibit D.

21. Over the next few months, the NYCLU periodically contacted the attorney at DOJ assigned to handle the FOIA appeal in an attempt to facilitate processing and discern the nature of the extensive delay.

22. In a letter dated March 26, 2007, DOJ denied the NYCLU's administrative appeal, reiterating its position that national security required that no information about Operation Darkening Clouds be disclosed: "The existence or nonexistence of Operation Darkening Cloud(s) is classified and the FBI properly refused to confirm or deny the

existence of any such records pursuant to 5 U.S.C. § 552(b)(1), which protects classified information from disclosure under the FOIA." A copy of the letter is attached to this complaint as Exhibit E.

23. DOJ has never attempted to recover the NYCLU's copy of "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems" as a classified document improperly labeled as unclassified and improperly disclosed to parties not possessing a proper security clearance.

24. The NYCLU has exhausted the applicable administrative remedies with respect to this FOIA request.

## CAUSE OF ACTION

**Defendant DOJ Failed to Disclose and Release Records Responsive to Plaintiff's Request**

25. DOJ and the FBI, its component agency, have violated the NYCLU's right to DOJ records under 5 U.S.C. § 552.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Declare that the defendant's refusal to confirm or deny the existence of Operation Darkening Clouds as a basis for denying the NYCLU's request violates the Freedom of Information Act;

3) Order the defendant to disclose any and all requested records properly subject to disclosure under the Freedom of Information Act – including segregable portions of documents partially exempt – and to make copies available to the NYCLU;

4) Order the defendant to produce a Vaughn Index indicating the statutory basis for any redaction or withholding;

5) Award the NYCLU costs and reasonable attorneys' fees in this action as provided by 5 U.S.C. § 552(a)(4)(E); and

6) Grant any other relief the Court deems appropriate.

Respectfully submitted,

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION, by

DANIEL J. FREEMAN (DF-1181)
CHRISTOPHER DUNN (CD-3991)
ARTHUR EISENBERG (AE-2012)
COREY STOUGHTON (CS-6436)
125 Broad Street, 19th Floor
New York, New York 10004-2400
(212) 607-3300

JAMEEL JAFFER (JJ-4653)
L. DANIELLE TULLY (LT-0509)
National Security Project
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, New York 10004-2400
(212) 549-2500

LEE GELERNT (LG-8511)
AMRIT SINGH
American Civil Liberties Union Foundation
Immigrants' Rights Project
125 Broad Street, 18th Floor
New York, New York 10004-2400
(212) 549-2500

Dated:  June 24, 2008
        New York, New York

| **FD-448**<br>Revised<br>10-27-2004 | FEDERAL BUREAU OF INVESTIGATION<br>**FACSIMILE COVER SHEET** |
|---|---|

### PRECEDENCE

◯ Immediate ◯ Priority ● Routine

### CLASSIFICATION

◯ Top Secret ◯ Secret ◯ Confidential ◯ Sensitive ● Unclassified

### TO

| Name of Office: Yale Law School | Facsimile Number: 203-432-1426 | Date: 5-4-07 |
|---|---|---|
| Attn: Michael J. Wishnie | Room: | Telephone Number: 203-436-4780 |

### FROM

| Name of Office: FBI | Number of Pages: (including cover) 10 |
|---|---|
| Originator's Name: Patricia C Grant | Originator's Telephone Number: 202-324-9468 | Originator's Facsimile Number: 202-324-3752 |
| Approved: | | |

### DETAILS

Subject:
Freedom of Information Act Request # 1061308-01
Subject: Operation Front Line

Special Handling Instructions:


Brief Description of Communication Faxed:
OPCA 16 & 5 page Document


### WARNING

Information attached to the cover sheet is U.S. Government Property. If you are not the intended recipient of this information disclosure, reproduction, distribution, or use of this information is prohibited (18.USC, § 641). Please notify the originator or local FBI Office immediately to arrange for proper disposition.

U.S. Department of Justice

Federal Bureau of Investigation

*Washington, D.C. 20535*

PROFESSOR MICHAEL J WISHNIE                May 4, 2007
YALE UNIVERSITY
POST OFFICE BOX 209090
NEW HAVEN, CT 06529 9090


                              Subject: OPERATION FRONT LINE

                              FOIPA No. 1061308- 001

Dear Professor Wishnie:

        The enclosed documents were reviewed under the Freedom of Information/Privacy Acts (FOIPA), Title 5,
United States Code, Section 552/552a.  Deletions have been  made to protect information which is exempt from
disclosure, with the  appropriate exemptions noted on the  page next to the excision.  In addition, a deleted page
information sheet was inserted in the file to indicate where pages were withheld entirely.  The exemptions used to
withhold information are marked below and explained on the enclosed Form OPCA-16a:

|  Section 552 | | Section 552a |
|---|---|---|
| ☐(b)(1) | ☐(b)(7)(A) | ☐(d)(5) |
| ☒(b)(2) | ☐(b)(7)(B) | ☐(j)(2) |
| ☐(b)(3)_____ | ☐(b)(7)(C) | ☐(k)(1) |
| _____ | ☐(b)(7)(D) | ☐(k)(2) |
| _____ | ☒(b)(7)(E) | ☐(k)(3) |
| _____ | ☐(b)(7)(F) | ☐(k)(4) |
| ☐(b)(4) | ☐(b)(8) | ☐(k)(5) |
| ☐(b)(5) | ☐(b)(9) | ☐(k)(6) |
| ☐(b)(6) | | ☐(k)(7) |

5  page(s) were reviewed and 5  page(s) are being released.

☐   Document(s) were located which originated with, or contained information concerning other
      Government agency(ies) [OGA].  This information has been:

      ☐   referred to the OGA for review and direct response to you.

      ☐   referred to the OGA for consultation.  The FBI will correspond with you regarding this
            information when the consultation is finished.

☒  You have the right to appeal any denials in this release.  Appeals should be directed in
    writing to the Director, Office of Information and Privacy, U.S. Department of Justice,1425
    New York Ave., NW. Suite 11050, Washington, D.C.  20530-0001 within sixty days from the
    date of this letter.  The envelope and the letter should be clearly marked "Freedom of Information
    Appeal" or "Information Appeal."  Please cite the FOIPA number assigned to your request so that it
    may be easily identified.

☐ The enclosed material is from the main investigative file(s) in which the subject(s) of your request
    was the focus of the investigation.  Our search located additional references, in files relating to other

individuals, or matters, which may or may not be about your subject(s). Our experience has shown,
when ident references usually contain information similar to the information processed in the main
file(s). Because of our significant backlog, we have given priority to processing only the main
investigative file(s). If you want the references, you must submit a separate request for them in writing,
and they will be reviewed at a later date, as time and resources permit.

☒ See additional information which follows.

Sincerely yours.

David M. Hardy
Section Chief
Record/Information
 Dissemination Section
Records Management Division

Enclosure(s)

For your information, there is an additional document currently being processed and will be sent
to you the week of May 7, 2007.

## EXPLANATION OF EXEMPTIONS

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552

(b)(1)    (A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified to such Executive order;

(b)(2)    related solely to the internal personnel rules and practices of an agency;

(b)(3)    specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld;

(b)(4)    trade secrets and commercial or financial information obtained from a person and privileged or confidential;

(b)(5)    inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

(b)(6)    personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy;

(b)(7)    records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ( A ) could be reasonably be expected to interfere with enforcement proceedings, ( B ) would deprive a person of a right to a fair trial or an impartial adjudication, ( C ) could be reasonably expected to constitute an unwarranted invasion of personal privacy, ( D ) could reasonably be expected to disclose the identity of confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis, and, in the case of record or information compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source, ( E ) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law, or ( F ) could reasonably be expected to endanger the life or physical safety of any individual;

(b)(8)    contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions; or

(b)(9)    geological and geophysical information and data, including maps, concerning wells.

### SUBSECTIONS OF TITLE 5, UNITED STATES CODE, SECTION 552a

(d)(5)    information compiled in reasonable anticipation of a civil action proceeding;

(j)(2)    material reporting investigative efforts pertaining to the enforcement of criminal law including efforts to prevent, control, or reduce crime or apprehend criminals;

(k)(1)    information which is currently and properly classified pursuant to an Executive order in the interest of the national defense or foreign policy, for example, information involving intelligence sources or methods;

(k)(2)    investigatory material compiled for law enforcement purposes, other than criminal, which did not result in loss of a right, benefit or privilege under Federal programs, or which would identify a source who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(3)    material maintained in connection with providing protective services to the President of the United States or any other individual pursuant to the authority of Title 18, United States Code, Section 3056;

(k)(4)    required by statute to be maintained and used solely as statistical records;

(k)(5)    investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for Federal civilian employment or for access to classified information, the disclosure of which would reveal the identity of the person who furnished information pursuant to a promise that his/her identity would be held in confidence;

(k)(6)    testing or examination material used to determine individual qualifications for appointment or promotion in Federal Government service the release of which would compromise the testing or examination process;

(k)(7)    material used to determine potential for promotion in the armed services, the disclosure of which would reveal the identity of the person who furnished the material pursuant to a promise that his/her identity would be held in confidence.

FBI/DOJ

UNCLASSIFIED LES



## U.S. Citzenship and Immigration Services/
## Fraud Detection and National Security Unit
## Automated Systems

"The 9/11 Commission Report, in its recommendations section entitled "What to do? A Global Strategy", recognizes the significance of "terrorist travel" as "More than 500 million people annually cross U.S. borders at legal entry points, about 330 million of them non-citizens. Another 500,000 or more enter illegally without inspection across America's thousands of miles of land borders or remain in the country past the expiration of their permitted stay. The challenge for national security in an age of terrorism is to prevent the very few people who pose overwhelming risks from entering or remaining in the United States undetected". The Commission stated that "Targeting travel is at least as powerful a weapon against terrorists as targeting the money" and that "The United States should combine terrorist travel intelligence, operations, and law enforcement in a strategy to intercept terrorists, find terrorist travel facilitators, and constrain terrorist mobility... Information systems able to authenticate travel documents and detect potential terrorist indicators should be used at consulates, at primary border inspection lines, in immigration services offices, and in intelligence and enforcement units".

In short, the Commission has recognized that our immigration system and laws were not a principal consideration in the nation's counterterrorism efforts prior to 9/11. Border and interior enforcement / service immigration bureaus will play an important role in any integrated effort to detect, deter and dismantle terrorist organizations and operations. The Office of Intelligence (OI) has forged ties with U.S. Citizenship and Immigration Services (CIS) through its Fraud Detection and National Security (FDNS) Unit to begin to address this issue. CIS is fully committed to all appropriate information sharing, in order to enhance the vital national security missions of the FBI. OI strongly encourages all agent and analyst personnel to familiarize themselves with the following information regarding CIS / DHS immigration components and how a working relationship with them can assist in the attainment of FBI missions.

With the stand-up of the Department of Homeland Security (DHS) in March of 2003, the legacy Immigration and Naturalization Service (INS) ceased to exist and was replaced by three distinct bureaus within DHS. The following will serve to clarify what immigration-related missions and functions are now located within those three bureaus as well as educate FBI personnel as to how certain tools afforded through U.S. Citizenship and Immigration Services (CIS) can greatly enhance the FBI missions of criminal investigations, counterterrorism and foreign counterintelligence.

On March 1, 2003, the responsibility for providing immigration-related services and benefits such as naturalization and work authorization were transferred from the INS to CIS. The USCIS website has more information on the policies, procedures, forms, and fees involved in immigrating to the U.S.

Investigative and enforcement responsibilities for enforcement of federal immigration laws, customs laws, and air security laws were transferred to U.S. Immigration and Customs Enforcement (ICE).

UNCLASSIFIED LES



UNCLASSIFIED LES

    The agencies that were either moved entirely or merged, in part, based upon law enforcement functions, included the investigative and intelligence resources of the United States Customs Service, the INS, the Federal Protective Service and, as of November 2003, the Federal Air Marshals Service. ICE is the investigative arm of the Border and Transportation Security Directorate (BTS), the operational directorate within the DHS tasked with securing the nation's borders and safeguarding its transportation infrastructure. ICE brings together more than 20,000 employees who focus on the enforcement of immigration and customs laws within the United States, the protection of specified Federal buildings, and air and marine enforcement.

    The Bureau of Customs and Border Protection (CBP) assumed responsibilities for protecting our borders within DHS. CBP has unified the border agencies with one frontline officer position that integrates the work of approximately 18,000 inspectors who came together from three different agencies when CBP was formed on March 1, 2003. In addition, the Border Patrol, which was previously an enforcement component of the legacy INS, complements the inspectors at ports of entry in CBP's primary mission to prevent terrorists and terrorist weapons from entering the U.S. at and between the ports of entry. CBP is also responsible for apprehending individuals attempting to enter the United States illegally, stemming the flow of illegal drugs and other contraband.

    The USCIS is responsible for the administration of immigration and naturalization adjudication functions and establishing immigration services, policies and priorities. These functions include adjudication of immigrant visa petitions, naturalization petitions, asylum and refugee applications, and all other adjudications formerly performed by the INS. Fifteen thousand federal employees and contractors working in approximately 250 Headquarters and field offices around the world comprise CIS.

    CIS operates under a Congressional mandate to address significant national security concerns at the same time that it meets its mission to administer America's immigration system. In accordance, the CIS Director created the Office of Fraud Detection and National Security (FDNS) in recognition of the need to enhance the integrity of the legal immigration system and identify persons who pose a threat to national security and/or public safety. FDNS was created to address these concerns and enhance system integrity, bridging USCIS to ICE and to the larger law enforcement and intelligence community within and outside of DHS.

    Traditionally, the Bureau interfaced with the service or benefit side of the legacy INS relative to needed immigration assistance. XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

b2
b7E

XXXXXXXXXXXXXXXXXXXXXXXXX In addition, limited FBI personnel were aware of the tremendous value added to their investigations through hard copy INS file information and/or their automated information systems. In fact, FBIHQ built the 9/11 investigation out, in part, from lead information found in the INS Nonimmigrant Information System (NIIS) once the identities and profiles of the nineteen terrorist hijackers had been established.

Case 1:08-cv-05674-PKC Document 1-2 Filed 06/24/2008 Page 16 of 26



UNCLASSIFIED LES

Director Mueller has stated in the past, "We have the best investigators in the world in this institution and some of the best people here at Headquarters that carry me. The challenge is to get them the tools that they need to become even better. And that is what we are working on ..." As you know, the mission of the Intelligence Program is to optimally position the FBI to meet current and emerging national security and criminal threats by, in part, providing useful, appropriate, and timely information and analysis to the national security, homeland security and law enforcement communities.

FDNS, within USCIS, manages and/or has access to pertinent tools that speaks directly to Director Mueller's challenge. These tools, when properly understood and utilized, will benefit Bureau agents and analysts in completing their taskings and achieving their missions. With the increased security demands placed on our Nation, one of FDNS' immediate objectives is to proactively share time sensitive immigration information and systems to organizations such as the FBI, and ultimately protect our Homeland.

The formation of FDNS enhances the operations of well-established agencies, such as the Bureau, as a number of the automated systems currently utilized by USCIS provide proactive and real time data mining opportunities. The investigative insights that can be achieved as a result of the data mining efforts are significant and the information sharing is equally advantageous for such diverse missions as criminal investigations, counterterrorism and foreign counterintelligence.

A thumbnail sketch of a few of the representative automated systems follows, as well as some real-world examples of how those systems have made a substantial difference in past investigations conducted by this Agency and other law enforcement agencies. In addition to these representative information systems, FDNS will be devising a new proactive data mining tool or software that will identify suspected immigration benefit fraud and suspicious patterns or profiles but can similarly be adopted for use in various criminal and intelligence investigations. FDNS and CIS have a consistent goal to provide warranted systems access to the FBI, so that the Bureau can capitalize on this information for faster response times to national security threats or criminal activity.

### The Non-Immigrant Information System (NIIS):

The NIIS is a mainframe system accessible to all USCIS offices. It stores arrival and departure records for non-immigrant foreign nationals and provides automation support for tracking their arrivals and departures.

### The Central Index System (CIS):

CIS provides automated information regarding all legal permanent resident aliens (USPERs) and naturalized citizens as well as foreign nationals that have been arrested for a variety of immigration and criminal offenses and consequently placed into immigration removal proceedings. The database identifies the location of the alien's hardcopy immigration or A-file.

UNCLASSIFIED LES



UNCLASSIFIED LES

### Computer-Linked Application Information Management System (CLAIMS):

CLAIMS 3.0 was established as an umbrella system that incorporates casework-oriented processing of immigration benefits, including application receipt, adjudication and disposition. The system contains voluminous amounts of current and historical information regarding both immigration benefit applicants and beneficiaries as well as their authorized representatives in those filings. It is inclusive of those applying for temporary as well as permanent immigration benefits.

The following are actual anecdotes of casework in which immigration information and systems played a major role in bringing an investigation to a successful conclusion:

An identified fraternal group of university students from a hostile foreign nation operates as a cut out for that nation's intelligence service and performs a number of lower level taskings in furtherance of intelligence gathering. Certain FBI investigative techniques have disclosed that that service has directed a number of the students at several unidentified mid-western universities to alter their intended major to the hard sciences so that they can be utilized in the nation's prohibited nuclear arms program upon graduation. A sweep of the immigration databases with the defined parameters allows USG investigators to clearly pinpoint those student nationals that had changed major to the hard sciences at three different universities within the time frame established via the sensitive investigative technique. Subsequent investigation and collaboration with the American intelligence community resulted in a successful pitch to two of those students to assist the USG in exchange for permanent resident alien status in the U.S.

A criminal investigation by INS and FBI special agents into Asian Organized Crime in California determined that the PRC SUBJECTS were utilizing sophisticated immigration fraud schemes to smuggle in dozens of Chinese nationals at the cost of $50,000 per. The targeted alien smuggling organization had created numerous shell companies in order to gain entry for the illicit aliens as L-1 intracompany transferees for start up businesses allegedly involved in information technology.

Preliminary investigation identified one particular apartment building as a commonality for several of the suspect companies in terms of a mailing address. A sweep of the immigration databases established that in excess of 100 shell companies had used this same mailing address for petitions submitted to INS on behalf of the smuggled aliens. Sophisticated pattern recognition software can be utilized today to proactively identify such criminal conspiracies.

A criminal investigation by INS and FBI special agents into Russian Organized Crime disclosed via data mining the INS automated systems that the same ethnic Russian nationals were offered interchangeably as corporate board members for shell companies formed to submit petitions on behalf of gang members attempting to enter the U.S. as L-1s and H-1B aliens allegedly coming to the U.S. to perform services in a specialty occupation. Investigation determined that the conspiracy was run out of Brighton Beach and the gang members were intended to further organized crime activities through work in auto chop shops.

UNCLASSIFIED LES

UNCLASSIFIED LES

A member agency within the U.S. Intelligence Community provided cleared INS personnel with lead information regarding a hostile foreign power and its nationals that may have entered the United States. These subjects included intelligence officers and cooptees. A sweep of the immigration systems determined that a number of these individuals were gainfully employed as H-1B researchers on USG grants in furtherance of DARPA missile research.

Several JTTF investigations determined that the Religious Worker or R nonimmigrant visa is commonly misused by radical fundamentalist clergy to immigrate to the United States in furtherance of proselytizing and fundraising that amounts to material support. Lead information developed out of Guantanamo reveals a particular mosque to be of interest and the resulting immigration database sweep identifies eight "clergy" that entered the United States through that mosque and are now subject to full field investigation.

During the pre-invasion of Iraq, FDNS personnel pulled together over 130,000 immigration records which were the cornerstone for Operation Darkening Clouds (FBI) and Operation Liberty Shield (DHS). The 2004 Threat Task Force (FBI) and Operation Frontline (ICE) is utilizing the same methodology.

## CONTACT FDNS:

To obtain additional information about FDNS or to find out how to gain access to these technologies, contact XXXXXXXXXXXXX the FDNS Law Enforcement Liaison, in Washington, D.C. at 202 353 XXXX or via e-mail at XXXXXXXX@dhs.gov. XXXXXXXXXX is a retired INS Senior Special Agent and spent the last five years of his career in FBIHQ's International Terrorism Operations Section (ITOS). Agen XXXXXXXX was the principal INS liaison to FBIHQ and worked on the 9/11 investigation from Headquarters.

b6
b7C

The FDNS website is accessible via the DHS network where available.

UNCLASSIFIED LES

TOTAL P.08

TOTAL P.10



# Yale Law School

Daniel J. Freeman
*Lowenstein Clinic*

May 21, 2007

Federal Bureau of Investigation (FBI)
Record Information/Dissemination Section (RIDS)
Service Request Unit, Room 6359
935 Pennsylvania Avenue, NW
Washington, D.C. 20535

**Re: Freedom of Information Act Request**

Dear FOIA Officer:

Pursuant to the federal Freedom of Information Act, 5 U.S.C. § 552, on behalf of the Allard K. Lowenstein International Human Rights Clinic and the New York Civil Liberties Union, I request access to and copies of any record held by the Federal Bureau of Investigation mentioning or describing any action, program, operation, or activity titled "Operation Darkening Cloud" or "Operation Darkening Clouds."

If this information is not available in succinct format, I request the opportunity to view the records in your offices. I request a fee waiver pursuant to 5 U.S.C. § 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii), as the information is not sought for commercial uses and its disclosure is in the public interest, because it is likely to contribute significantly to public understanding of the operations and activities of the government and is not primarily in the commercial interest of the requester.

If the request is denied in whole or in part, please justify all deletions by reference to the specific exemptions of the Act. In addition, please release all segregable portions of otherwise exempt material. I reserve the right to appeal your decision to withhold any information or to deny a waiver of fees.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), I expect a response within the twenty (20) day statutory time limit. If you have any questions in processing this request, I can be contacted by mail at the address below or by telephone at (203) 887-7542.

Thank you for your assistance in this matter.

Sincerely,

Daniel J. Freeman          Michael Wishnie          Corey Stoughton

P.O. BOX 209090, NEW HAVEN, CONNECTICUT 06520-9090 • TELEPHONE 203 887-7542 • FACSIMILE 203 432-1426

COURIER ADDRESS 127 WALL STREET, NEW HAVEN, CONNECTICUT 06511 • EMAIL DANIEL.FREEMAN@AYA.YALE.EDU



**U.S. Department of Justice**

Federal Bureau of Investigation

Washington, D. C. 20535-0001

August 15, 2007

Mr. Daniel J. Freeman
Yale Law School
Lowenstein Clinic
Post Office Box 209090
New Haven, Connecticut 06520-9090

Request No.: 1080309

Dear Mr. Freeman:

      This is in response to your Freedom of Information Act (FOIA) request for copies of any record held by the Federal Bureau of Investigation (FBI) mentioning or describing any action, program, operation, or activity titled Operation Darkening Cloud or Clouds. The FBI neither confirms nor denies the existence of the activity or records concerning this subject. The nondisclosure of possible operational names, activities, and information maintains integrity and effectiveness of the counterterrorism, counterintelligence, and law enforcement efforts of the FBI.

      You may file an administrative appeal by writing to the Director, Office of Information and Privacy, United States Department of Justice, 1425 New York Ave., NW, Suite 11050, Washington, D.C. 20530-0001, within sixty days from the date of this letter. The envelope and the letter should be clearly marked "Freedom of Information Appeal" or "Information Appeal." Please cite the FOIPA number assigned to your request so that it may be easily identified.

Sincerely yours,

David M. Hardy
Section Chief
Record/Information
  Dissemination Section
Records Management Division

**U.S. Department of Justice**

Federal Bureau of Investigation

c/o Marcel Drive
Winchester, VA 22602-4843

Official Business





RECEIVED

AUG 2 2 2007



UNITED STATES POSTAGE

U.S. OFFICIAL MAIL
PENALTY FOR
PRIVATE USE $300

02 1A
0004206186
MAILED FROM ZIP CODE 22602

PITNEY BOWES

$ 00.41⁰
AUG 16 2007



125 Broad Street
New York, NY 10004
(212) 607 3300
Fax (212) 607 3318
www.nyclu.org

September 21, 2007

Director, Office of Information and Privacy
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC 20530-0001

**Re: Freedom of Information Act Appeal**
**Request No. 1080309**

Dear FOIA Officer:

This is an administrative appeal under the federal Freedom of Information Act, 5 U.S.C. § 552 and 28 C.F.R. § 16.9.

On May 21, 2007, I sent a letter requesting records from the Federal Bureau of Investigation pertaining to an FBI action known as "Operation Darkening Clouds." On August 22, 2007, I received a letter from David Hardy, Section Chief, Record/Information Dissemination Division, dated August 15, 2007, effectively denying the FOIA request, on the grounds that the FBI "neither confirms nor denies the existence of the activity or records concerning this subject." Copies of the original request and the denial letter are attached for your reference.

The FBI's refusal to confirm or deny the existence of Operation Darkening Clouds is not an appropriate response to this FOIA request. This type of response is only reasonable when an agency has not previously acknowledged the existence of the subject of a FOIA request. In *Phillippi v. CIA*, the archetypical case in this area, the government asserted that such a response was warranted when "[o]fficial acknowledgment of the involvement of specific United States Government agencies would disclose the nature and purpose of the Program and could . . . severely damage the foreign relations and the national defense of the United States." 546 F.2d 1009, 1013-14 (D.C. Cir. 1976).

In contrast, here the FBI has publicly acknowledged the existence and basic scope of Operation Darkening Clouds. On May 4, 2007, in response to a FOIA request labeled No. 1061308-001, the FBI released a document titled "U.S. Citizenship and Immigration Services / Fraud Detection and National Security Unit Automated Systems." The final page of this document states, "During the pre-invasion of Iraq, FDNS personnel pulled together over 130,000 immigration records which were the cornerstone for Operation Darkening Clouds (FBI) and Operation Liberty Shield (DHS)." A copy of this document is attached for your reference. It is difficult to imagine what harm to national security

could come from confirming the existence of a program that the government has already publicly acknowledged.

Therefore the FBI must indicate whether responsive documents exist and—if exemptions apply—under what exemptions it is withholding the information. *See Mead Data Central, Inc. v. Dep't of Air Force*, 556 F.2d 242, 251 (D.C. Cir. 1977) ("[W]hen an agency seeks to withhold information it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply."). Should the FBI determine that any responsive documents must be withheld in their entirety, I request an index describing the documents and the exemptions under which they are being withheld.

Pursuant to 5 U.S.C. § 552(a)(6)(A)(ii), I expect a response within the twenty (20) day statutory time limit. If you have any questions in processing this request, I can be contacted by mail at the address above or by telephone at (212) 607-3349.

Thank you for your assistance in this matter.

Sincerely,

Daniel J. Freeman

**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                     *Washington, D.C. 20530*

## OCT – 2 2007

Mr. Daniel J. Freeman
New York Civil Liberties Union
125 Broad Street
New York, NY 10004

     Re: Request No. 1080309

Dear Mr. Freeman:

     This is to advise you that your administrative appeal from the action of the Federal Bureau of Investigation was received by this Office on September 28, 2007.

     The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **07-2559**. Please mention this number in any future correspondence to this Office regarding this matter.

     We will notify you of the decision on your appeal as soon as we can. We regret the necessity of this delay and appreciate your continued patience.

                    Sincerely,

                    Priscilla Jones
                    Supervisory Administrative Specialist



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**MAR 2 6 2008**

Daniel J. Freeman, Esq.
New York Civil Liberties Union          Re:    Appeal No. 07-2559
125 Broad Street                               Request No. 1080309
New York, NY 10004                             ADW:CAS

Dear Mr. Freeman:

You appealed from the action of the Headquarters Office of the Federal Bureau of Investigation on your request for access to records pertaining to Operation Darkening Cloud(s). I regret the delay in responding to your appeal.

After carefully considering your appeal, I am affirming the FBI's action in refusing to confirm or deny the existence of any records responsive to your request. The existence or nonexistence of an Operation Darkening Cloud(s) is classified and the FBI properly refused to confirm or deny the existence of any such records pursuant to 5 U.S.C. § 552(b)(1), which protects classified information from disclosure under the FOIA.

If you are dissatisfied with my action on your appeal, you may file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Janice Galli McLeod
Associate Director

U.S. Department of Justice

OIP/IWAV-1030

Washington, D.C. 20530
Official Business
Penalty for Private Use $300



rec'd
3/31/08

US OFFICIAL MAIL
$300 Penalty
For Private Use

Mailed From 20530
03/26/2008
$00.40
US POSTAGE
Hasler

016H466010-47